IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF REVERE, MASSACHUSETTS<br><br>    Defendant. | CIVIL ACTION NO. |

## COMPLAINT

The United States of America, through its undersigned attorneys, by the authority of the Attorney General, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF ACTION

1.    This is a civil action brought against the City of Revere, Massachusetts ("Revere" or the "City") pursuant to Sections 309(b) and (d) of the Federal Water Pollution Control Act of 1972, as amended (commonly referred to as the "Clean Water Act" and hereinafter referred to as "CWA"), 33 U.S.C. § 1319(b) and (d), seeking injunctive relief and civil penalties for Defendant's failure to comply with the CWA in its discharge of pollutants from its small municipal separate storm sewer system ("Small MS4") and wastewater collection system without a National Pollutant Discharge Elimination System ("NPDES") permit authorizing such discharges in violation of Section 301 of the CWA, 33 U.S.C. § 1311, and for Defendant's failure to provide information to the Administrator of the EPA in violation of Section 308 of the CWA, 33 U.S.C. § 1318.

## JURISDICTION, VENUE AND NOTICE

2.      This Court has jurisdiction over the subject matter of this action pursuant to

Sections 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), and 28 U.S.C. §§ 1331, 1345

and 1355.

3.      Venue is proper in this district pursuant to Section 309(b) of the CWA, 33 U.S.C.

§ 1319(b), and 28 U.S.C. § 1391(b) and (c), and 28 U.S.C. § 1395.

4.      Notice of the commencement of this action has been given to the Commonwealth

of Massachusetts pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## PARTIES

5.      Plaintiff is the United States of America, acting by the authority of the Attorney

General and on behalf of the Administrator of the EPA ("Administrator").

6.      Defendant Revere is a municipality incorporated under the laws of the

Commonwealth of Massachusetts ("Commonwealth"), with a mailing address of 281 Broadway,

Revere, Massachusetts 02151.

7.      Revere is a "municipality" within the meaning of Section 502(4) of the CWA,

33 U.S.C. § 1362(4), and a "person" within the meaning of Section 502(5) of the CWA, 33

U.S.C. § 1362(5).

## INTERVENING PLAINTIFF

8.      Section 309(e) of the CWA, 33 U.S.C. § 1319(e), provides:

> Whenever a municipality is a party to a civil action
> brought by the United States under this section, the
> State in which such municipality is located shall be

2

joined as a party.  Such State shall be liable for
payment of any judgment, or any expenses incurred
as a result of complying with any judgment, entered
against the municipality in such action to the extent
that the laws of that State prevent the municipality
from raising revenues needed to comply with such
judgment.

The Commonwealth has committed to join this action pursuant to Section 309(e)

of the CWA, 33 U.S.C. § 1319(e), as an intervening plaintiff.  The United States reserves all

claims that it may have against the Commonwealth under Section 309(e).

## STATUTORY BACKGROUND

9.      Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of

pollutants into navigable waters of the United States except in compliance with, *inter alia*, the

terms and conditions of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C.

§ 1342.

10.      Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines the term "discharge

of pollutants" to include "any addition of any pollutant to navigable waters from any point

source."

11.      Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines the term "pollutant" to

include, *inter alia*, "sewage . . . , biological materials . . . , and . . . municipal . . . waste

discharged into water."

12.      Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines the term "navigable

waters" as "the waters of the United States, including the territorial seas."

13.      Part 122 of Title 40 of the Code of Federal Regulations, promulgated under the

CWA to regulate the NPDES permit program, defines "waters of the United States" to include, in

relevant part, "[a]ll waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide," and tributaries to such waters. 40 C.F.R. § 122.2(a) and (e).

14.     Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines the term "point source" to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . from which pollutants are or may be discharged."

15.     Section 402 of the CWA, 33 U.S.C. § 1342, provides that the Administrator may issue permits under the NPDES program for the discharge of pollutants into navigable waters of the United States upon such specific terms and conditions as the Administrator may prescribe.

16.     Pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p), on December 8, 1999, EPA promulgated regulations at 40 C.F.R. § 122.26 that set forth NPDES permit requirements to address storm water discharges from Small MS4s.

17.     Section 308(a) of the CWA, 33 U.S.C. § 1318(a), authorizes the Administrator to require the owner or operator of any point source to provide such information as the Administrator may reasonably need to carry out the objectives of the CWA, including but not limited to establishing and maintaining records and making reports.

18.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates Sections 301(a) or 308(a) of the CWA, 33 U.S.C. §§ 1311(a) and 1318(a).

19.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), authorizes the commencement of an action for civil penalties against any person who violates Sections 301(a) or 308(a) of the CWA, 33 U.S.C. §§ 1311(a) and 1318(a).

## GENERAL ALLEGATIONS

20.     Revere conveys its sewage and other wastewater to the Massachusetts Water Resources Authority ("MWRA"), a public authority established to provide wholesale water and sewer service to a number of metropolitan Boston communities, for treatment at MWRA's Deer Island Treatment Plant.  MWRA charges Revere a wholesale rate for its wastewater treatment services, which Revere then passes on to its residential and commercial customers.

21.     Revere is the owner and operator of the City's wastewater collection system ("Collection System") by which Revere's residential, commercial and industrial sewage is conveyed to MWRA.

22.     The manholes, sewer lines, and various other confined discrete conveyances within the Collection System, from which pollutants are discharged, are "point sources," within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

23.     Revere is also the owner and operator of a Small MS4, which is a system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, and storm drains) designed to collect, convey, and directly discharge storm water to receiving waters.

24.     Revere's Small MS4 outfalls, from which pollutants are discharged, are "point sources," within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

25.     Revere's Collection System and Small MS4 are designed to keep sewage and other wastewater in the Collection System separated from storm water in the Small MS4.

26.     On April 18, 2003, EPA issued an NPDES General Permit for Stormwater

Discharges from Small Municipal Separate Storm Sewer Systems ("General Permit") pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p), and 40 C.F.R. § 122.26, which became effective on May 1, 2003. On June 4, 2003, Revere notified EPA that it was seeking coverage for discharges of storm water from its Small MS4 under the General Permit. On October 17, 2003, EPA authorized Revere to discharge storm water from its Small MS4 pursuant to the terms of the General Permit. The General Permit was to expire on May 1, 2008, but has been administratively extended and remains in full force and effect.

27.     Part I(B)(2)(j) of the General Permit specifically provides that the General Permit does not authorize the discharge of storm water that is mixed with non-storm water, unless in compliance with another NPDES permit or otherwise specifically allowable under several exceptions set forth in Part I(F) of the General Permit.

28.     Part I(F) of the General Permit does not include untreated wastewater or sewage as allowable non-storm water discharges.

29.     Part I(B)(2)(k) of the General Permit specifically provides that the General Permit does not authorize discharges of storm water that would cause or contribute to in-stream exceedance of applicable water quality standards.

30.     Unauthorized wastewater connections to Revere's Small MS4 result in the discharge of pollutants to waters of the United States from Revere's Small MS4 outfalls. Unauthorized wastewater connections to Revere's Small MS4 are either direct connections (e.g., wastewater piping either mistakenly or deliberately connected to the storm drains) or indirect connections (e.g., infiltration into the Small MS4 from cracks in Revere's Collection System).

31.     Discharges of untreated wastewater combined with storm water from Revere's

6

Small MS4 contribute high levels of pollutants, including sewage, heavy metals, toxics, oil and grease, solvents, nutrients, viruses, and bacteria to water bodies receiving discharges from Revere's Small MS4 outfalls.

32.     The water bodies that Revere's Small MS4 outfalls discharge to are:  Mill Creek, Chelsea Creek, Sales Creek, Belle Isle Inlet, Trifone Brook, Town Line Brook, Central Drainage Ditch, Eastern Drainage Ditch, Diamond Creek, and the Pines River.  Mill Creek is a tributary of Chelsea Creek (a.k.a. Chelsea River), which drains into Boston Harbor.  Sales Creek is a tributary of Belle Isle Inlet, which also drains into Boston Harbor.  Trifone Brook is a tributary of Town Line Brook, which is in turn a tributary of the Pines River.  Central Drainage Ditch and Eastern Drainage Ditch are tributaries of Diamond Creek, which is also in turn a tributary of the Pines River.  The Pines River drains into Broad Sound, which is part of Massachusetts Bay.

33.     Mill Creek, Chelsea Creek, Sales Creek, Belle Isle Inlet, Trifone Brook, Town Line Brook, Central Drainage Ditch, Eastern Drainage Ditch, Diamond Creek, and the Pines River are "waters of the United States" as defined in 40 C.F.R. § 122.2 and are "navigable waters" under Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

34.     Pursuant to the Massachusetts Surface Water Quality Standards, 314 C.M.R. § 4.00, Mill Creek, Chelsea Creek, Sales Creek, Belle Isle Inlet, Trifone Brook, Town Line Brook, Central Drainage Ditch, Eastern Drainage Ditch, Diamond Creek, and the Pines River are surface water bodies classified as Class B, Class SA not designated for shellfishing, Class SB not designated for shellfishing, or Class SA approved for open shellfishing.  314 C.M.R. § 4.06.

35.     Prior to January 2007, the applicable water quality standard for surface waters classified as Class B, Class SA not designated for shellfishing, and Class SB not designated for

shellfishing, set forth at 314 C.M.R. § 4.05,  provided that fecal coliform bacteria shall not

exceed a geometric mean of 200 organisms per 100 milliliters ("ml") nor shall more than 10% of

the samples exceed 400 organisms per 100 ml.

36.     Prior to January 2007, the applicable water quality standard for surface waters

classified as Class SA approved for open shellfishing, set forth at 314 C.M.R. § 4.05, provided

that fecal coliform bacteria shall not exceed a geometric mean of 14 organisms per 100 ml nor

shall more than 10% of the samples exceed 43 organisms per 100 ml.

37.     Since January 2007, the applicable water quality standard for surface waters

classified as Class B, set forth at 314 C.M.R. § 4.05, provides that *E. coli* bacteria shall not

exceed a geometric mean of 126 colonies per 100 ml and no single sample shall exceed 235

colonies per 100 ml.

38.      Since January 2007, the applicable water quality standard for surface waters

classified as Class SA not designated for shellfishing and Class SB not designated for

shellfishing, set forth at 314 C.M.R. § 4.05, provides that *Enterococci* bacteria shall not exceed a

geometric mean of 35 colonies per 100 ml and no single sample shall exceed 104 colonies per

100 ml.

39.     Since January 2007, the applicable water quality standard for surface waters

classified as Class SA approved for open shellfishing, set forth at 314 C.M.R. § 4.05, provides

that fecal coliform bacteria shall not exceed a geometric mean of 14 organisms per 100 ml, nor

shall more than 10% of samples exceed a geometric mean of 28 organisms per 100 ml.

40.     On May 18, 2006, EPA issued Revere a request for information pursuant to

Section 308(a) of the CWA, 33 U.S.C. § 1318(a), which required Revere to, *inter alia*, provide to

8

EPA verbal and written reports, within 24-hours and 5 days of discovery, respectively, of all future known wet-weather discharges of wastewater or other pollutants from the Collection System, including the date, time and location of the discharge.

## FIRST CLAIM FOR RELIEF
### (Discharges of Pollutants from Small MS4 Outfalls)

41.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 40 above.

42.     From at least January 27, 2006, to approximately November 30, 2007, three unauthorized residential wastewater connections to Revere's Small MS4 at Washburn Avenue resulted in the discharge of untreated wastewater containing pollutants, including sewage, from one of Revere's Small MS4 outfalls to Sales Creek.

43.     The discharge of non-storm water from Revere's Small MS4 outfalls is specifically not authorized by Part I(B)(2)(j) of the General Permit, and untreated wastewater is not one of the excepted non-storm water discharges set forth in Part I(F) of the General Permit.

44.     Results from surface water quality samples taken from Belle Isle Inlet, Sales Creek, Trifone Brook, Central Drainage Ditch, and Mill Creek on multiple occasions from at least August 2004 through at least June 2010 demonstrate that Revere is discharging pollutants, including fecal coliform, *E. coli*, and *Enterococcus* bacteria, all indicative of sewage, biological materials, and municipal waste, from its Small MS4 outfalls.

45.     The discharge of storm water that would cause or contribute to in-stream exceedances of applicable water quality standards is specifically not authorized by Part I(B)(2)(k) of the General Permit.

46.     Fecal coliform, *E. coli*, and *Enterococcus* bacteria, sewage, biological materials, and municipal waste are "pollutants" within the meaning of Section 502(6) of the CWA, 33 U.S.C. § 1362(6).

47.     Revere has discharged and/or is discharging fecal coliform, *E. coli*, and *Enterococcus* bacteria to surface waters classified as Class B, Class SA not designated for shellfishing, Class SB not designated for shellfishing, and Class SA approved for open shellfishing in excess of applicable water quality standards.

48.     Revere is engaged in the "discharge of pollutants" from its Small MS4 outfalls within the meaning of Section 502(12) of the CWA, 33 U.S.C. § 1362(12).

49.     Revere's Small MS4 outfalls, from which pollutants are discharged, are "point sources," within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

50.     Belle Isle Inlet, Sales Creek, Trifone Brook, Central Drainage Ditch, and Mill Creek are "waters of the United States" as defined in 40 C.F.R. § 122.2 and are "navigable waters" under Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

51.     The discharges of sewage and untreated wastewater from Revere's Small MS4 outfalls to waters of the United States are not authorized by the General Permit or any other NPDES permit or any provision of the CWA.

52.     The discharges of pollutants from Revere's Small MS4 outfalls, as described above, are violations of Section 301(a) of the CWA, 33 U.S.C § 1311(a).

53.     Upon information and belief, Revere will continue to discharge pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C § 1311(a), unless restrained by this Court.

10

54.     Pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Revere is liable for injunctive relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to and including March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

## SECOND CLAIM FOR RELIEF
### (Sanitary Sewer Overflow Discharges)

55.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 54 above.

56.     On at least 123 occasions from approximately January 27, 2000 to at least June 14, 2010, the City's Collection System experienced sanitary sewer overflows ("SSOs"), which resulted in the discharge of untreated wastewater containing pollutants, including raw sewage, from point sources within the Collection System to waters of the United States.

57.     A majority of the City's SSOs that resulted in discharges to surface waters were overflows from manholes.  After a manhole overflows, the wastewater typically flows to a Small MS4 street drain and then to a Small MS4 outfall.

58.     Revere's Small MS4 outfalls discharge to Mill Creek, Chelsea Creek, Sales Creek, Belle Isle Inlet, Trifone Brook, Town Line Brook, Central Drainage Ditch, Eastern Drainage Ditch, Diamond Creek, and the Pines River, each of which are "waters of the United States" as defined in 40 C.F.R. § 122.2 and are "navigable waters" under Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

11

59.     The discharge of non-storm water from Revere's Small MS4 outfalls is specifically not authorized by Part I(B)(2)(j) of the General Permit, and untreated wastewater is not one of the excepted non-storm water discharges set forth in Part I(F) of the General Permit.

60.     A number of the City's SSOs discharge untreated wastewater containing pollutants directly to surface waters.

61.     For example, during at least April 2007, the City's Marshall Street sanitary sewer pump station experienced SSOs, which resulted in the discharge of untreated wastewater containing pollutants, including raw sewage, to the Pines River marsh which is tributary to the Pines River.

62.     Pines River marsh is a "water of the United States" as defined in 40 C.F.R. § 122.2 and is a "navigable water" under Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

63.     Revere is engaged in the "discharge of pollutants" as a result of SSOs in its Collection System within the meaning of Section 502(12) of the CWA, 33 U.S.C. § 1362(12).

64.     These SSOs are discharges from "point sources," as defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

65.     Revere does not have an NPDES permit for its such wastewater discharges.

66.     None of Revere's SSO discharges to waters of the United States are authorized by a NPDES permit or any provision of the CWA.

67.     The discharges as a result of SSOs in Revere's Collection System are violations of Section 301(a) of the CWA, 33 U.S.C § 1311(a).

68.     Upon information and belief, Revere will continue to discharge pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C § 1311(a),

unless restrained by this Court.

69.     Pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), and

the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Revere is liable for injunctive

relief and for civil penalties not to exceed $27,500 per day for each violation occurring prior to

and including March 15, 2004, $32,500 per day for each violation occurring after March 15,

2004 but prior to and including January 12, 2009, and $37,500 per day for each violation

occurring after January 12, 2009.

### THIRD CLAIM FOR RELIEF
**(Failure to Comply with Section 308 Information Request)**

70.     The United States realleges and incorporates by reference the allegations of

paragraphs 1 through 69 above.

71.     On at least 13 occasions from at least October 6, 2006 to June 9, 2008, Revere

failed to provide to EPA verbal and written reports of SSOs from manholes and pump stations

within the City's Collection System, as required by EPA's May 18, 2006 Section 308

information request to the City.

72.     Each failure to report an SSO in accordance with EPA's May 18, 2006 Section

308 information request is a violation of Section 308(a) of the CWA, 33 U.S.C § 1318(a).

73.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and the Debt

Collection Improvement Act of 1996, 31 U.S.C. § 3701, Revere is liable for civil penalties not to

exceed $27,500 per day for each violation occurring prior to and including March 15, 2004,

$32,500 per day for each violation occurring after March 15, 2004 but prior to and including

January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

13

## **PRAYER FOR RELIEF**

WHEREFORE, the United States of America respectfully requests that the Court grant the following relief:

1.      Permanently enjoin the City, pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), from any and all future violations of the CWA and from discharges of pollutants except as authorized by a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342;

2.      Order the City to pay a civil penalty not to exceed $27,500 per day per violation occurring prior to and including March 15, 2004, $32,500 per day per violation occurring after March 15, 2004 but prior to and including January 12, 2009, and $37,500 per day per violation occurring after January 12, 2009;

3.      Award the United States its costs in this action; and

14

4.      Grant such other relief as the Court deems just and proper.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division


Dated: August 25, 2010                       /s/ Bethany Engel
BETHANY ENGEL
BBO # 660840
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611 – Ben Franklin Station
Washington, DC  20044
(202) 514-6892
Bethany.Engel@usdoj.gov


CARMEN MILAGROS ORTIZ
United States Attorney
District of Massachusetts

GEORGE HENDERSON III
Assistant United States Attorney
District of Massachusetts
1 Courthouse Way
John Joseph Moakley Courthouse
Boston, Massachusetts  02210
(617) 748-3272
George.Henderson2@usdoj.gov


OF COUNSEL:

MAN CHAK NG
Senior Enforcement Counsel
U.S. Environmental Protection Agency, Region 1